## **AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Damian Farley, being duly sworn, do hereby state as follows:

1. I am a Special Agent with the Drug Enforcement Administration ("DEA") of the United States Department of Justice, where I have been employed for approximately twenty years. I am currently assigned to the DEA's Boston Field Division and am responsible for investigating drug offenses in and around the Boston Metropolitan Area. Prior to joining the DEA, I was employed as a police officer with the Dutchess County New York Sheriff's Department for 8 years.

2. During my law enforcement career, I have received specialized training regarding the activities of narcotics traffickers, including the methods they use to package, store, and distribute narcotics, and the methods through which the proceeds of narcotics trafficking activities are concealed.

3. In addition to this training, I have had extensive experience investigating drug traffickers. Since joining the DEA, I have participated in scores of narcotics investigations both as a case agent and in a subsidiary role. I have debriefed more than 100 defendants, informants, and witnesses who had personal knowledge about narcotics trafficking and the operation of trafficking organizations. I have personally participated in

all aspects of narcotics investigations, including conducting surveillance, using confidential informants, acting in an undercover capacity, and conducting court-authorized interceptions of wire and electronic communications. I have also been the affiant on dozens of complaint and search warrant affidavits.

4.     This affidavit is submitted in support of an application for a criminal complaint charging **MATTHEW DAVIS** with possession of cocaine base with intent to distribute in violation of Title 21, United States Code, Section 841.

5. Although I was not present at **DAVIS'** February 24, 2008 arrest, I am familiar with the facts and circumstances surrounding it.  I have interviewed Boston Police OfficerS Sean Martin, Micheal O'Rourke, and Steven Canto about their knowledge of the matters described below (including the drugs seized from **DAVIS** after his arrest).   I have also reviewed the report prepared about the underlying incident, examined a laboratory certification issued by the Massachusetts Department of Public Health, drug testing results obtained from Davis by the Massachusetts Probation Department, and have discussed this case with other law enforcement agents.

6.     This affidavit does not set forth all the facts developed during the course of the underlying investigation. Rather, it sets forth only those facts I consider to be sufficient to establish probable cause to believe that **DAVIS** has

2

committed the crime set forth in the accompanying Criminal Complaint.

7. On February 24, 2008, Officers Cutone, Canto, O'Rourke, and Martin were working in an unmarked cruiser out of District B-2, which covers portions of Roxbury and Mission Hill. At approximately 6:20 p.m. that night, they placed **MATTHEW DAVIS** under arrest on an outstanding warrant issued out of the Brighton District Court.

8. **DAVIS** was placed under arrest in the area of 100 Washington Street in Roxbury and taken to District B-2 to be processed and booked. During a post-arrest search at the District, four packages containing an off-white rock like substance were recovered from **DAVIS**'left sock and a plastic bag of marijuana was found in his right sock.

9. Officer Martin personally inspected the four packages recovered from **DAVIS**' left sock. Based on Officer Martin's familiarity with crack cocaine and his training and experience, he concluded that each of the packages contained one or more rocks of crack cocaine.

10. I am also advised that the packages seized from **DAVIS'** left sock (which, as set forth above, Officer Martin inspected and determined to be crack cocaine) were thereafter sent to the State Laboratory in Jamaica Plain, Massachusetts. On March 20, 2008, the Laboratory certified that initial testing showed that those bags contained cocaine base. This, of course, is

3

consistent with Officer Martin's determination that the drugs were crack cocaine.  The State Laboratory has been requested to do additional testing of the drugs seized from **DAVIS.**

11.   In a post-<u>Miranda</u> statement made after the discovery of the drugs on the night of his arrest, **DAVIS** claimed to Officer Martin that it was the first time he had ever sold drugs.  **DAVIS** advised Officer Martin that he was selling drugs on February 24, 2008 because "he needed money for his kid," and stated that, while he smoked marijuana, he did not use crack cocaine.

12.   No crack pipe or paraphernalia consistent with personal drug use were seized from **DAVIS** on February 24, 2008. Nor, based on Officer Martin's personal interactions with **DAVIS** on the night of his arrest, was there any indication that **DAVIS** had been using crack cocaine.

13.   I have also been advised that, when **DAVIS** was on state court probation between December, 2006 and February, 2007, he was drug tested and never tested positive for cocaine (but did test positive for marijuana).

14.   Based upon the foregoing, I submit there is probable cause to believe that, on February 24, 2008, **MATTHEW DAVIS** was in possession of cocaine base with intent to distribute in

4

violation of 21 U.S.C. §841.

_____

SPECIAL AGENT DAMIAN FARLEY
DRUG ENFORCEMENT ADMINISTRATION

Sworn to and subscribed before me this 31 day of March,

2008.

_____

MARIANNE B. BOWLER
UNITED STATES MAGISTRATE JUDGE

5